**Sonja M. BERRY, et al., Plaintiffs,**

v.

**Wesley W. BEAN, Jr., etc., et al., Defendants.**

**Civ. No. H–85–4094.**

United States District Court, D. Maryland.

Dec. 6, 1985.

Allen M. Lenchek and Gaffney, Anspach, Schember, Klimaski & Marks, Washington, D.C., for plaintiffs.

Thomas M. Barba, Staff Atty., Civ. Div., U.S. Dept. of Justice, Washington, D.C., and Alexander S. Nichols, Gen. Litigation Div., Office of the Judge Advocate Gen., Washington, D.C., and Charles P. Scheeler, Asst. U.S. Atty., Baltimore, Md., for defendants.

MEMORANDUM DECISION

ALEXANDER HARVEY, II, District Judge.

A black teenager is here seeking the right to continue to reside with her family on Andrews Air Force Base, Maryland. By Order of the Commander of the Base, Sonja Berry, who was then in high school and 18 years of age, was on March 25, 1985, barred from residing with her stepfather and brothers on the base.

This civil action was filed on October 2, 1985 by Sonja Berry and her stepfather, Robert L. Young, who is a Technical Sergeant in the United States Air Force and who has lived at Andrews Air Force Base with his family since 1983. Named as defendants in this case are Colonel Wesley W. Bean, Jr., Commander of the Base, and the Secretary of the Air Force. When suit was filed, Sonja Berry was living off the base in compliance with the Order. In this civil action, she and her father sought injunctive relief which would permit her to

return and live with the other members of her family.

Shortly after this action was instituted, plaintiffs filed a motion for a temporary restraining order (hereinafter "T.R.O."). A hearing was held on that motion in open Court on October 24, 1985. After hearing argument of counsel, the Court in an oral opinion ruled that the motion should be granted and that Sonja Berry should be permitted to return to Andrews Air Force base to reside with her parent and the other members of her family for a period of 10 days. Thereafter, the T.R.O. was extended for an additional period of 10 days, and the Court met with counsel and scheduled a hearing on plaintiffs' motion for a preliminary injunction for today. When defendants would not agree to an extension of the temporary restraining order until the Court had ruled on plaintiff's motion for a preliminary injunction, another hearing was held in open Court, and the Court then ruled that the temporary restraining order should be so extended.

Memoranda and exhibits have been filed in support of and in opposition to the pending motion for a preliminary injunction. An evidentiary hearing was held, and both plaintiffs testified. With the agreement of counsel, the evidence relied upon by defendants was submitted by way of affidavits and exhibits. The Court has now had an opportunity to consider all the evidence presented in the light of counsel's arguments and the applicable authorities. For the reasons to be stated herein, plaintiffs' motion for a preliminary injunction will be granted. Findings of fact and conclusions of law pursuant to Rule 52(a), F.R.Civ.P., are contained in this opinion.

I

*The Facts*

On March 2, 1985, Sonja Berry who was then an 18 year old High School student and a dependent of Technical Sergeant Robert Young, was in the early morning hours seated in a vehicle being operated by a male companion on Base property. Air Force Security Policeman Steve A. Scott stopped the vehicle after the driver had gone through a stop sign. The Police Officer detected an odor of marijuana smoke. Stubs of marijuana were found in the car, and the driver was charged with operating a vehicle under the influence of narcotics. Ms. Berry was questioned and admitted that she had smoked a joint on the way to the base. She was later charged with possession of marijuana. The Court finds from the evidence, however, that Sonja did not use marijuana on the base.

On March 13, 1985, Colonel Bean formally advised Sergeant Young in writing that his dependent had sponsored as her guest an individual who was operating a vehicle under the influence of marijuana and had admitted to the police that she had been smoking marijuana too. Colonel Bean stated that such conduct would not be tolerated, and he advised Sergeant Young that if any further incidents involving his dependent took place it would be necessary for Bean as the Base Commander to take more stringent measures, including restrictions and conditions on Sonja. Various counseling agencies were recommended to Sergeant Young to deal with the problem.

On March 25, 1985, without further notice to Sergeant Young, Colonel Bean issued to Sonja Berry a letter of expulsion. She was notified that she should depart from Andrews Air Force Base immediately and that she could not reenter the base except for court appearances and emergency medical care. The Bar Order further stated "This order is issued as a result of records available to this headquarters which reflect the following information: On 2 Mar. 85, you were cited for possession/use of a controlled/dangerous substance."

Sonja Berry did not comply with this Order, because she did not want to leave her family. After being charged with trespassing, she did finally comply, leaving the base in August, 1985 and not returning until the Court had issued the T.R.O. In August 1985, Sergeant Young approached Colonel Bean requesting that he rescind

the Bar Order. Sergeant Young explained that the Bar Order caused hardship to his family by interfering with the daily care of a younger child. Sonja's mother, who had been married to Sergeant Young for 13 years, had died in 1984, and Sonja had thereafter assisted her stepfather in caring for a 12–year old child in the family.

Colonel Bean refused to rescind the Bar Order permanently, mainly because of Sergeant Young's attitude. He instead suggested to Sergeant Young that he move his entire family from the base. Colonel Bean did agree to permit Sonja to return to live with her family temporarily. On August 26, 1985, Colonel Bean temporarily suspended the Bar Order until October 1, 1985. Sonja did not then return because she had a job in Arlington, Virginia where she had been residing with her father's fiancee. When counsel's request that the Bar Order be permanently rescinded was denied by Colonel Bean, this civil action was instituted.

## II

### The Applicable Law

Whether to grant or deny a motion for a preliminary injunction is a decision committed to the sound discretion of the trial court. *First Citizens Bank & Trust Co. v. Camp*, 432 F.2d 481, 483 (4th Cir.1970). The proper standard to be applied in determining whether a preliminary injunction should issue is the flexible "balance of hardship" test enunciated in *Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir.1977). Four factors must be considered by the Court as follows (550 F.2d at 193):

    1. The likelihood of irreparable harm to the plaintiff without an injunction;

    2. The probability of success on the merits;

    3. The likelihood of harm to the defendant if an injunction is issued; and

    4. The public interest.

The two more important factors are those of probable irreparable injury to the plaintiff without a decree, as compared to the likely harm to the defendant if one is issued. If the balance is struck in favor of the plaintiff, it is enough that grave or serious questions are presented, and plaintiff need not show a likelihood of success. *See* 550 F.2d at 196. However, the Fourth Circuit in *Blackwelder* pointed out that the importance of probability of success increases as the probability of irreparable injury diminishes. 550 F.2d at 985. Thus, it is apparent that these two factors must be considered at the outset in relation to each other.

## III

### Discussion

Insofar as the question of irreparable harm to the plaintiffs is concerned, this Court finds and concludes that the plaintiffs have met their burden on the record here. Defendants seek to bar a teenager from living with other members of her family with whom she has resided for many years. In addition, Sonja Berry seeks to attend a Community College located on Andrews Air Force Base. If she resides with her parent on the base she will qualify for resident tuition rates. Her intention is to attend this College and when not at school assist her stepfather in caring for the younger child in the family.

Breaking up this family unit for an indefinite period of time would undoubtedly cause great harm both to Sergeant Young and to his stepdaughter Sonja Berry, as well as to others in the family. If this Bar Order is not rescinded, this teenager, who is not employed, will be required to live on her own in the metropolitan Washington, D.C. area. Moreover, it appears that if she cannot live at Andrews Air Force Base, she would not be able to attend Community College on the base, a few blocks from Sergeant Young's home. Certainly she would suffer irreparable harm if she would not because of this Bar Order be permitted to be with and be supported by her parent and also further her education.

The harm to defendants on the other hand would be minimal. Defendants argue

that Colonel Bean's authority would be diluted in the eyes of the military community if Sonja Berry is permitted to return to live with other members of her family. Any such dilution under the circumstances here would be insignificant. Indeed, it appears that Colonel Bean was prepared to rescind the bar order permanently had Sergeant Young's attitude been better. Colonel Bean has stated that had Sergeant Young shown concern "about Ms. Berry's drug abuse and a willingness to take responsibility for improving her behavior, I would seriously have considered rescinding the bar letter." In any event, in spite of Colonel Bean's concern about the dilution of his authority, the Bar Order was temporarily rescinded, and for a period of some 5 weeks from August 26, 1985 until October 1, 1985, Sonja was granted permission to return to the base and live with her family. In view of these circumstances, it appears that, even in the eyes of Colonel Bean, Sonja's offense was not so serious that some accommodation would not be possible without doing harm to the Colonel's authority.

Colonel Bean has asserted that it is his responsibility "to see that dangerous or undesirable elements are excluded from the base." Sonja Berry hardly qualifies on the facts here as either dangerous or undesirable. On the contrary, this Court finds that because of her youth, this teenager made an unfortunate mistake. She smoked marijuana off the base with her date. From her testimony, I am satisfied that she now acknowledges her mistake and will take steps to see that it is not repeated. Based on these facts, the finding is that the harm to defendants if a preliminary injunction is entered would be minimal.

I am further satisfied that plaintiffs have met their burden of showing a probability of success. Undoubtedly a commanding officer has broad discretion to exclude civilians from a military base. *See Cafeteria Workers v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). However, this power cannot be exercised in a manner that is arbitrary or discriminatory. *United States v. Albertini*, —— U.S. ——, ——, 105 S.Ct. 2897, 2907–2908, 86 L.Ed.2d 536

(1985). Moreover, Colonel Bean cannot take any action which is inconsistent with statutory or regulatory limits on his power to exclude civilians from his base. *Idem.* Air Force Regulations state that the Base Commander's action "must be reasonable in relation to his responsibility to protect· and preserve order on the installation and to safeguard persons and property thereon." U.S. Air Force Reg. No. 355–11, Par. 1(b) (Sept. 10, 1971), quoted by the dissent in *Albertini*, —— U.S. ——, fn. 3, 105 S.Ct. 2909 fn. 3. Whether a post commander has acted arbitrarily or beyond the bounds of statutory or regulatory limits is a question which the courts are always open to decide. *See United States v. Flower*, 452 F.2d 80, 86 (5th Cir.1971), *rev'd on other grounds*, 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972). The question here is whether the Order was rational. *Weissman v. United States*, 387 F.2d 271, 273 (10th Cir.1967).

In this particular case, plaintiffs have produced sufficient proof to show that they would probably succeed in establishing that Colonel Bean's action was arbitrary and at least was not reasonable or rational. Moreover, it was beyond certain statutory limits. His original notice on March 13, 1985 indicated that the action taken was merely to warn Sergeant Young and his stepdaughter that future conduct of this sort would not be tolerated. Suddenly, less than two weeks later, Colonel Bean upped the ante and issued his Bar Order. There was nothing that Sonja did nor any additional facts which came to light within the 12–day period between March 13 and March 25, which would support the more stringent penalty imposed. Indeed, the police report had already been seen by Colonel Bean since Sonja had been cited for possession of marijuana on March 2, 1985.

Colonel Bean asserts that he did not intend the March 13 letter to dispose of the matter. A reading of the letter itself belies that contention. He stated, "If any further incidents involving Sonja take place, it will be necessary for me to consider more stringent measures. The options available to me include ... imposition of restrictions

and conditions on Sonja ..." Assuredly this warning letter was intended to dispose of the matter, absent any further incidents involving Sonja—and there were none. Had Colonel Bean intended that more drastic action would be taken at a later time, he presumably would have so stated in his March 13 letter to Sergeant Young. Thus, there is nothing in the record to support Colonel Bean's sudden and unsupported decision to change a mere warning to a teenager and her parent into an expulsion order. Under these circumstances, plaintiffs have met their burden of showing probable success as to their contention that the action taken was arbitrary.

This conclusion is supported by the letter of September 16, 1985 which Colonel Bean sent to counsel for the plaintiffs. In that letter, he refused to rescind the Bar Order and stated that his determination was based upon a number of factors. The first factor mentioned by him was that Ms. Berry had "pled guilty to possession of a controlled dangerous substance, marijuana, while within the confines of Andrews Air Force Base." He further stated: "She was sentenced to 12 months probation and fined $125 by the federal magistrate."

What Colonel Bean overlooked was that Ms. Berry's case was disposed of pursuant to the provisions of 21 U.S.C. § 844(b). The plea was a conditional plea, subject to being set aside later. Section 844(b) is available for youthful first offenders such as Sonja, and it was so employed by the United States Magistrate. Since Sonja was not over 21 years of age, no judgment of guilty was entered at the time that she appeared in court, but further proceedings were deferred and she was placed on probation for one year. Under the statute, upon expiration of her period of probation, she will be discharged and the proceedings will be dismissed against her, without any adjudication of guilt. Moreover, she would have the right to apply to the Court for an order to expunge from all court records any recordation relating to her arrest and subsequent proceedings. The statute specifically provides that a dismissal of the charges should not be deemed a conviction

for purposes of disqualifications or disabilities imposed by law upon conviction of a crime "or for any other purpose." The statute further provides that the youthful offender is entitled to an expungement order on dismissal of the charges, the effect of which is to restore such person to the status occupied before the arrest.

It is accordingly apparent from his letter of September 16, 1985, that Colonel Bean based his Bar Order on his perception that Ms. Berry had been convicted and sentenced for this offense. But clearly there was no final conviction. Unless she violates the terms of her probation (and there is no indication that there has been any such violation in the ensuing 9 month period), Colonel Bean has acted contrary to § 844 and has used Sonja's conviction for a purpose not permitted by law.

The charges against her, contrary to the provisions of § 844(b)(1), have been used for the purpose of excluding her from the base. Moreover, she cannot, if the Bar Order is upheld contrary to the provisions of § 844(b)(2), be restored to the status she occupied before her arrest. Thus, Colonel Bean's action is inconsistent with the statutory limits of § 844, which would not permit him to exclude a civilian like Sonja from the base for the reason assigned by him. See U.S. v. Alibertini, supra.

Once again, Colonel Bean, after the fact, has asserted in his affidavit that he did not intend to imply in the September 16, 1985 letter that his bar order was based on the magistrate's action. Once again, this assertion was made after litigation was commenced and will not be credited. The September 16, 1985 letter speaks for itself, and it is apparent that one of the principal reasons for Colonel Bean's action was Sonja's plea of guilty and sentence. Colonel Bean's belated denial will be accorded no weight.

There is other evidence to support this Court's conclusion that plaintiffs would probably succeed in showing that Colonel Bean's bar order was arbitrary or at the very least not reasonable. Colonel Bean's

solution to the problem was his suggestion that Sergeant Young remove himself and his family from the base. But plaintiff Young has neither the desire nor the means to do this. I am satisfied from the conflicting evidence here that Sergeant Young could not afford to move this family unit off the base into rental housing which would be appropriate. I would note that his wife, who worked as a nurse, died in 1984, and her contribution to family income is no longer available. It appears that the action taken by Colonel Bean was based in part on his perception of Sergeant Young's attitude. Colonel Bean has stated that had Sergeant Young acknowledged that his daughter's conduct was inappropriate and had he shown genuine concern about her behavior, Colonel Bean would have considered rescinding the Bar Order. It is thus apparent that the Base Commander's perception of this enlisted man's attitude has played a part in barring this teenager from residing as a part of the family unit on the base.

Finally, this Court is satisfied that the public interest supports the issuance of a preliminary injunction. It is certainly in the public interest that a family unit of this sort be kept together. It is certainly in the public interest that this unemployed teenager not be required to live alone, away from the guidance and support of her parent. If, as he professed to be, Colonel Bean was genuinely concerned about Sonja Berry's attitude and her exposure to narcotics, the very worst thing that could happen would be her removal from the family home at age 18 with the requirement that she make her own way in a large metropolitan area. Finally, the public interest would clearly favor the continuation by Sonja Berry of her education at a Community College.

Defendants argue that since Sonja initially disobeyed the expulsion Order, she comes into Court with unclean hands and equitable relief should be denied. But if the expulsion Order was invalid (as this Court has found), there has been no transgression. Sonja honestly believed that she should not have been removed from her family because of what she had done. And this Court would agree, under all the circumstances here, that plaintiffs will probably prevail on this issue.

For all these reasons, plaintiffs' motion for a preliminary injunction will be granted. Counsel for plaintiffs should prepare and submit an appropriate Order.