## JAMES A. MERRITT AND SONS, Appellees,

v.

John O. MARSH, Jr., Secretary of U.S. Department of the Army; John F. Lehman, Jr., Secretary of the U.S. Department of the Navy; Russell A. Rourke, Secretary of the U.S. Department of the Air Force, Appellants.

No. 86–3830.

United States Court of Appeals, Fourth Circuit.

Argued April 7, 1986.

Decided May 23, 1986.

Freddi Lipstein, U.S. Dept. of Justice, Washington, D.C., for appellants.

Lionel S. Lofton, Charleston, S.C., for appellees.

Before WINTER, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

The South Carolina district court issued a preliminary injunction on March 7, 1986, prohibiting the Secretaries of the Army, Navy, and Air Force from suspending James A. Merritt and his company, James A. Merritt & Sons, Inc., from competing for government contracts. The Secretaries appealed and moved for summary reversal. On April 8, 1986, this court entered an order summarily reversing the district court's grant of the preliminary injunction.

Merritt is a mechanical contractor currently performing work for the Navy. On November 13, 1985, Merritt and his company were indicted for filing false claims in connection with Navy contracts. On February 21, 1986, the Navy notified Merritt that he and his company were temporarily suspended from bidding for future government contracts, pending completion of the criminal proceedings. A jury trial was scheduled for the latter part of April 1986. The suspension was issued pursuant to the Federal Acquisition Regulations, 48 C.F.R. subpart 9.4 (1985). The suspension did not affect Merritt's performance on existing government contracts.

Alleging primarily that the Acquisition Regulations are unconstitutional, Merritt brought this action and sought a temporary restraining order.[1] He does not claim that the Secretaries failed to comply with the procedures outlined in the Acquisition Regulations; rather, he contends that the rules violate the due process clause of the fifth amendment to the federal Constitution.[2] Following a hearing, the district court granted the preliminary injunction. The court noted that any harm the government would suffer in continuing to deal with Merritt would be outweighed by the harm to Merritt if the suspension were enforced.

■ Our review of the district court's action is guided by a line of cases beginning with *Blackwelder Furniture Co. of*

---

1. Merritt also alleged that the suspension was arbitrary and capricious and that it was undertaken for the purpose of punishment, rather than in the public interest. These allegations are not seriously pursued by Merritt on appeal.

2. Merritt also alleges that the suspension violates his sixth amendment right to a trial by jury, but does not elaborate on exactly how he is deprived of that right.

*Statesville v. Seilig Manufacturing Co.,* 550 F.2d 189 (4th Cir.1977). This court stated in *Blackwelder* that a district court's discretion in determining whether to grant interim relief "is not boundless and must be exercised within the applicable rules of law or equity." *Id.* at 193. Although the trial court's primary duty is to balance the harms, it must consider four factors in ruling on a request for a preliminary injunction: (1) the plaintiff's likelihood of success on the merits; (2) the likelihood of irreparable injury to the plaintiff if the injunction is denied; (3) the injury to the defendant if the injunction is granted; and (4) the public interest. *North Carolina State Ports Authority v. Dart Containerline Co.,* 592 F.2d 749, 750 (4th Cir.1979); *see Blackwelder,* 550 F.2d at 194–95. The weight to be given each factor varies according to the circumstances of each case. When the balance of harms decidedly favors the plaintiff, he is not required to make a strong showing of a likelihood of success; nevertheless, there must at least be a showing that the case raises grave or serious questions. *Blackwelder,* 550 F.2d at 195.

Merritt's petition for a temporary restraining order alleged that the suspension would inflict irreparable harm on the company which outweighed any harm to the government. His affidavit states that forty percent of his company's business is with the military and that the suspension would result in "irrecoverable monetary losses;" leading to layoffs of an estimated fifty employees and the permanent loss of some of his most highly skilled workers. The district court accepted Merritt's prediction of the harm which would result from the suspension. The court also found that the government would suffer little or no harm from the issuance of a preliminary injunction, noting the gap between the date of the indictment and the date of the suspension.[3]

The district court failed to discuss or make any finding concerning the other two factors affecting the granting of interim relief. Nothing in the district court's ruling indicates what that court considered to be the likelihood of Merritt's success on his constitutional claim, or even the seriousness of the questions raised by that claim. Importantly, Merritt is unable to cite any cases which have questioned the constitutionality of a suspension under circumstances similar to those present here. The government, on the other hand, points out that similar suspension regulations have been upheld in the face of contentions that preconviction suspensions are unconstitutional. *See, e.g., Electro-Methods, Inc. v. United States,* 728 F.2d 1471 (Fed.Cir. 1984); *Mainelli v. United States,* 611 F.Supp. 606 (D.R.I.1985).

■ The Acquisition Regulations provide that suspension should be imposed on the basis of adequate evidence of fraud, antitrust violations, or certain other crimes, including embezzlement and theft, pending the completion of any investigation or legal proceedings. 48 C.F.R. 9.407–1(b). This "adequate evidence" requirement, when coupled with the provisions for notice and the opportunity to submit argument and evidence in opposition to the suspension, serves to protect the due process rights of contractors. By the terms of the rule, an indictment for fraud is adequate evidence for suspension. 48 C.F.R. 9.407–2. We agree with the rationale of that provision. A decision to issue an indictment is made by a deliberative public body acting as an arm of the judiciary, operating under constitutional and other legal constraints. The Constitution does not require the government to wait for the outcome of the criminal proceedings before implementing an administrative suspension when a contractor has been accused of fraud after the grand jury's investigation and deliberative process. An indictment triggers a judicial process which protects the rights of the ac-

---

**3.** The district court found the 100 day gap between the indictment and the suspension significant. The government explained that the delay was caused by the slow progress of the informa-

tion through channels, not by any deliberation or hesitation about whether the suspension was necessary to protect the government's (and the public's) interest.

cused while determining guilt or innocence. The formalities attendant to issuing an indictment carry sufficient indicia of reliability to allow the government to act to protect itself against future dealings with someone accused of fraud.

A suspension is to be imposed "only in the public interest for the Government's protection and not for purposes of punishment." 48 C.F.R. 9.402(b). In this case the public interest and the potential harm to the government coincide. The proper expenditure of tax dollars is, of course, a primary responsibility of government. It is not only correct for the government to question the integrity of a contractor who has been indicted for the manner in which he carried out military contracts, but failure to do so would be highly irresponsible.

In the instant case, it is clear that Merritt is not likely to prevail on his constitutional challenge to the Acquisition Regulations. Furthermore, the public interest favors allowing the suspension of contractors indicted for fraud against the government. A preliminary injunction such as issued by the district court ties the government's hands in protecting that public interest. While Merritt may lose the opportunity to bid on an undetermined number of military contracts during the suspension period, we cannot agree with the district court that this loss constitutes irreparable harm.[4] This conclusion is supported by the principle that there must be a strong showing of probable irreparable injury because Merritt is unlikely to prevail on his constitutional claim. *Dart Containerline*, 592 F.2d at 750.

Summary reversals are reserved for extraordinary cases, and, although such action is normally taken only after briefing, our Internal Operating Procedure 27.5 provides that we may act when a case is mature for full consideration. Rule 2 of the Federal Rules of Appellate Procedure provides for the suspension of procedural rules in the interest of expediting a decision or for other good cause. This appeal has been expedited. We think the circumstances underlying it fit the rationale of both Rule 2 and I.O.P. 27.5. The district court improperly enjoined the Secretaries from refusing to consider bids by a contractor whose integrity had been questioned by an indictment for fraud. That court's action, in effect, would permit a suspension only after the criminal charges result in a conviction. We summarily reversed because that is the only appellate procedure which would allow the government to protect the public interest while Merritt's fitness to contract with the military is determined in the courts.

For the stated reasons, the order granting the preliminary injunction was reversed by this court on April 8, 1986.

---

**4.** There has been no showing that Merritt will lose 40% of his business during the suspension. Current contracts are not affected. It is not clear from the record what contracts Merritt may be prevented from bidding on during the period. There was no attempt to show that Merritt would likely have been the successful bidder on any contract. The criminal trial has been scheduled to begin in April 1986. If Merritt and his company are acquitted, the suspension will be lifted and bidding can resume. If they are convicted, however, they cannot complain that the government has protected its interest by refusing to accept bids.