796 F.2d 713
 Sonja M. BERRY and Robert L. Young, Appellees,
v.
Wesley W. BEAN, Jr., Colonel, United States Air Force
Commander, Andrews Air Force Base and Secretary of
the Air Force, Appellants. (Two Cases)
 Nos. 85-2197(L), 86-1523.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 7, 1986.
Decided July 31, 1986.
 
 Howard S. Scher, Civil Div., U.S. Dept. of Justice (Richard K. Willard, Asst. Atty. Gen., Washington, D.C., J. Frederick Motz, U.S. Atty., Baltimore, Md., Anthony J. Steinmeyer, U.S. Dept. of Justice, Alexander S. Nicholas, Major, U.S. Air Force, Gen. Litigation Div., Office of the Judge Advocate Gen., Washington, D.C., on brief), for appellants.
 Allen M. Lenchek (Gaffney, Anspach, Schember, Klimaski & Marks, P.C., Washington, D.C., on brief), for appellees.
 Before HALL, PHILLIPS and WILKINSON, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 Sonja Berry sought injunctive relief from an order barring her from Andrews Air Force Base except for court appearances and medical emergencies. The base commander, Colonel Wesley Bean, issued the order after an incident involving "possession/use of a controlled/dangerous substance." At the time, Berry lived on base as an eighteen-year-old dependent of her stepfather, Technical Sergeant Robert L. Young. The district court, after issuing and extending a temporary restraining order, granted the preliminary injunction. It concluded that plaintiffs Berry and Young would suffer irreparable harm if the order were sustained, whereas enjoining the order would cause defendant Bean only minimal harm. It also found Berry likely to succeed on the merits, and the public interest weighing in her favor. Berry v. Bean, 623 F.Supp. 977 (D.Md.1985).
 
 
 2
 We reverse. The district court erred in finding plaintiffs likely to succeed on the merits. On the contrary, it is well-established that a base commander has the broadest authority to exclude civilians from his area of command. Here, the commander exercised this authority in response to an incident threatening his efforts to rid the base of illegal drugs, and his order was neither arbitrary nor discriminatory. Because the merits of this issue are so well settled against the plaintiffs, they are not entitled to a preliminary injunction. The law compels us to hold not only that the injunction should be dissolved, but also that the matter should be dismissed. Where the proper resolution of the dispute is so clear, there is nothing to be gained from remanding for consideration of the merits.
 
 I.
 
 3
 In the early morning hours of March 2, 1985, Sonja Berry was riding in a vehicle on base which was stopped by an Air Force Security Policeman for running a stop sign. According to the police report, the officer observed an obvious cloud of marijuana smoke emanating from the car. The driver of the car, Berry's male companion, failed a field sobriety test, and the officer found stubs of marijuana cigarettes in the car. Berry's companion was charged with operating a vehicle under the influence of narcotics. After being advised of her rights, Berry admitted that she had smoked marijuana herself on the way to the base. She was later charged with possession of marijuana, and pled guilty to that charge.
 
 
 4
 On March 13, 1985, Base Commander Colonel Wesley Bean wrote Sergeant Young of these events, warning that such conduct in the future could result in restrictions on Berry and revocation of Young's housing privileges. The letter recommended to Young various counseling services available on base and offered to arrange an appointment to discuss the matter. The warning was followed on March 25 with a "Letter of Expulsion and Order Not to Reenter Andrews AFB," issued to Berry because of the March 2 incident. The letter warned of possible criminal sanctions for illegal re-entry, and invited Berry to submit "any compelling reason which you believe would be sufficient to justify a modification or termination of this order."
 
 
 5
 Berry ignored both the invitation to contest the bar order and the order itself, remaining on base with her stepfather. She was subsequently arrested at Andrews Air Force Base and charged with trespassing in violation of 18 U.S.C. Sec. 1382. Berry finally moved off base after her second arrest on August 20, 1985, and lived with her stepfather's fiancee in northern Virginia.
 
 
 6
 Shortly thereafter, Sergeant Young asked Colonel Bean to dissolve the bar order, and on August 26, Bean suspended the order until October 1. During this period, Berry did not enter Andrews, though her lawyer requested that Bean revoke the bar order. Bean denied this request by letter of September 16, noting that "Ms. Berry has pled guilty to possession of a controlled dangerous substance, marijuana, while within the confines of Andrews Air Force Base." The letter specifically mentioned that "[t]he Air Force policy of prosecution of drug offenders is long standing and well publicized" and that "the negative impact of drugs upon the mission of the Air Force is well documented." Finally, Colonel Bean emphasized that entry onto a "closed" base such as Andrews was a privilege, and that "for those who engage in conduct which jeopardizes community safety or the mission of the military units stationed at Andrews the privilege should be withdrawn."
 
 
 7
 Plaintiffs sued on October 2, 1985, seeking injunctive and declaratory relief and an award of damages. They also sought a temporary restraining order, which the district court granted on October 25 for a ten-day period. The court granted a ten-day extension of the TRO and subsequently extended it indefinitely.[1]
 
 
 8
 The preliminary injunction was granted on December 6. The court found great harm to Berry and Young because the bar order resulted in "[b]reaking up this family unit for an indefinite period of time." Berry v. Bean, 623 F.Supp. at 979. Berry's inability to live on the base also prevented her from attending community college classes offered there. The court rejected the view that Colonel Bean's authority would be diluted if the order was stayed, finding that "[a]ny such dilution under the circumstances here would be insignificant." Id. at 980. The district court also found that plaintiffs would probably succeed on the merits, id. at 980-82, and that the public interest favored keeping the family together and allowing Berry to continue her education. Id. at 982.
 
 
 9
 Prior to oral argument on appeal, the parties stipulated to an additional fact relevant to our consideration of the case. Sergeant Young moved out of his assigned housing unit on Andrews Air Force Base on March 9, 1986, and the Base Commander terminated his housing privileges on March 10. There is no suggestion that this termination was in any way invalid, and we treat it simply as a factual matter for purposes of this appeal. Plaintiff Berry now resides with her stepfather and other family members off base in Maryland.[2]II.
 
 
 10
 Standards for the issuance of a preliminary injunction are well-established. Four factors enter the determination: "(a) plaintiff's likelihood of success in the underlying dispute between the parties; (b) whether plaintiff will suffer irreparable injury if interim relief is denied; (c) the injury to defendant if an injunction is issued; and (d) the public interest." North Carolina State Ports Authority v. Dart Containerline Co., 592 F.2d 749, 750 (4th Cir.1979). Though the district court is essentially required to balance the harms to the parties, Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189, 195-96 (4th Cir.1977), it must consider each factor in ruling on a motion for preliminary injunction. James A. Merritt and Sons v. Marsh, 791 F.2d 328, 329-30 (4th Cir.1986). Especially relevant here is the likelihood of success on the merits. "When the balance of harms decidedly favors the plaintiff, he is not required to make a strong showing of a likelihood of success; nevertheless, there must at least be a strong showing that the case raises grave or serious questions." Id. at 330. A plaintiff with little or no chance of success on the merits should not receive an injunction simply because she may be harmed by otherwise valid activity. See, e.g., id. at 330.
 
 
 11
 This principle controls the present dispute. Though the district court correctly stated the standards that governed its decision, Berry v. Bean, 623 F.Supp. at 979, it failed to recognize the unique context in which this suit arose and accordingly misjudged the likelihood that Berry would succeed on the merits. No matter what the balance of harms, plaintiff has no chance of ultimate success, and for this reason alone, the preliminary injunction should have been denied. We are especially hesitant at the outset to balance the hardships in this dispute, for such an inquiry draws the court into precisely the type of oversight of military decisions that the Supreme Court has found unacceptable. Given the absence of any hope that plaintiff will prevail, we are convinced that we should avoid balancing the hardships, and that the preliminary injunction should be dissolved.
 
 III.
 
 12
 The merits of this suit relate to the military context in which it arose, for "it is difficult to conceive of an area of governmental activity in which the courts have less competence." Gilligan v. Morgan, 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973). The Supreme Court has long noted that special considerations obtain when courts are asked to review the judgments of military authorities. These authorities "have been charged by the Executive and Legislative Branches with carrying out our Nation's military policy," Goldman v. Weinberger, --- U.S. ----, 106 S.Ct. 1310, 1313, 89 L.Ed.2d 478 (1986), and their power traces in turn to the broad constitutional mandate of those branches in military affairs. See United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). Courts, moreover, are "ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have." Chappell v. Wallace, 462 U.S. 296, 305, 103 S.Ct. 2362, 2368, 76 L.Ed.2d 586 (1983), quoting Warren, The Bill of Rights and the Military, 37 N.Y.U.L.Rev. 181, 187 (1962). For these reasons, courts accord decisions of military authorities great deference. See Rostkar v. Goldberg, 453 U.S. 57, 64-67, 101 S.Ct. 2646, 2651-53, 69 L.Ed.2d 478 (1981); Orloff v. Willoughby, 345 U.S. 83, 93-94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). See generally Kaczynski, From O'Callahan to Chappell : The Burger Court and the Military, 18 U.Rich.L.Rev. 235 (1984).
 
 
 13
 This general deference to military decisions is especially relevant where matters of base command and discipline are involved. While total isolation of the military from the civilian community it serves would be neither healthy or desirable, its unique mission renders it "a specialized society separate from civilian society." Parker v. Levy, 417 U.S. 733, 743, 94 S.Ct. 2547, 2555, 41 L.Ed.2d 439 (1974). It "must insist upon a respect for duty and a discipline without counterpart in civilian life." Schlesinger v. Councilman, 420 U.S. 738, 757, 95 S.Ct. 1300, 1313, 43 L.Ed.2d 591 (1975). It is not surprising that these characteristics create "particular tensions when the military and civilian realms conjoin," Serrano Medina v. United States, 709 F.2d 104, 107 (1st Cir.1983), and nowhere are these tensions more evident than on a military base. The Supreme Court has made clear, however, the broad authority of a base commander to resolve these tensions. It has recognized and reaffirmed "the historically unquestioned power of a commanding officer summarily to exclude civilians from his area of command." Cafeteria Workers v. McElroy, 367 U.S. 886, 893, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). See also United States v. Albertini, --- U.S. ----, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985). This authority is not diminished "even though the civilian ... otherwise entitled to base privileges is a dependent of a serviceman." Tokar v. Hearne, 699 F.2d 753, 756 (5th Cir.), cert. denied, 464 U.S. 844, 104 S.Ct. 146, 78 L.Ed.2d 137 (1983). It is limited only by the requirement that the officer not rely on grounds that are patently arbitrary or discriminatory. Cafeteria Workers, 367 U.S. at 898, 81 S.Ct. at 1750 (appellant "could not have been kept out because she was a Democrat or a Methodist."). Because we find that Colonel Bean had legitimate, indeed compelling, reasons to exclude Berry, we hold that plaintiff has no chance of success in challenging the bar order in this case.[3]
 
 
 14
 Appellant Bean asserts that, in reviewing the commander's bar order, we may consider only whether it states facially valid reasons for exclusion, with no scrutiny of the factual basis for the exclusion. There is considerable support for this view. In Cafeteria Workers, for example, the Court looked to whether the "announced grounds" for exclusion were "patently arbitrary or discriminatory," and found "the reason advanced" to be rational. 367 U.S. at 898, 81 S.Ct. at 1750 (emphasis added). The Court did not probe the factual basis for the bar order; it simply accepted the commander's determination and found it sufficient to support the exclusion. See also Serrano Medina v. United States, 709 F.2d at 109 ("To delve into the truth or falsity of the facts behind the exclusion would be to require the very hearing that appellant has been found not entitled to."); Weissman v. United States, 387 F.2d 271, 274 (10th Cir.1967) ("As a matter of law there may be no challenge to the General's statement of the reason for the bar order.").
 
 
 15
 Here, of course, it is clear that the reasons stated by the commander for the exclusion were factually accurate. Indeed, plaintiffs do not challenge the facts stated in the bar order. Thus, it is not disputed that Berry was "cited for possession/use of a controlled/dangerous substance," and pled guilty to possession of marijuana. We need only consider in this case whether exclusion for these reasons is arbitrary or discriminatory.
 
 
 16
 We have no doubt that the base commander was well within his discretion in barring Berry from Andrews Air Force Base. The problem of drug abuse in the military is well documented, and represents a serious risk to the mission of the Nation's armed forces. See Schlesinger v. Councilman, 420 U.S. 738, 761 n. 34, 95 S.Ct. 1300, 1314 n. 34, 43 L.Ed.2d 591 (1975); United States v. Trottier, 9 M.J. 337, 345-48 (C.M.A.1980); Kaczynski, America at War: Combatting Drugs in the Military, 19 N.Eng.L.Rev. 287 (1984). The corrupting influence of drug abuse upon civilian life is clearly compounded in a military setting. Abuse of drugs on the part of military personnel makes discipline more difficult, control of complex weapons, ships, and aircraft more risky, and combat readiness of any sort more problematic. Moreover, our military forces include "large numbers of young persons who are major targets for drug vendors and the nature of whose lives may create a special vulnerability to drug use." Trottier, 9 M.J. at 345. Although the bar order here was imposed upon a civilian, it is clear that once illegal substances enter a military base, "it is very difficult to predict where" and into whose hands they may travel. Id.
 
 
 17
 Colonel Bean thus acted with full immunity from judicial oversight in responding to an undisputed instance of unlawful drug abuse within his command authority. One court has suggested that "keeping drugs off base may be as much a 'security' concern as keeping out spies," and upheld a bar order of a civilian found on base with marijuana. Serrano Medina v. United States, 709 F.2d at 108, n. 4. Consistent with his duty "to insure the uninterrupted and successful accomplishment of the Air Force mission," 32 C.F.R. Sec. 809a.1(a) (1985), a base commander has an obligation to take effective steps to rid his base of illegal substances. We find nothing arbitrary in Colonel Bean's decision here. Even the dissenters in Albertini explicitly recognized that "civilians may be removed from military bases for a wide variety of reasons such as ... carrying ... a controlled substance...." --- U.S. at ----, 105 S.Ct. at 2909-10. See also Tokar v. Hearne, 699 F.2d at 754; Spock v. David, 469 F.2d 1047, 1055 (3d Cir.1972) aff'd sub nom., Greer v. Spock, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976); Government of Canal Zone v. Brooks, 427 F.2d 346, 347 (5th Cir.1970). While the district court speculated that the dilution of Colonel Bean's authority would be "minimal" or "insignificant" were he to withhold sanctions in this instance, 623 F.Supp. at 979-80, it is for the base commander, not the federal courts, to weigh both the gravity of the offense and the implications of the full range of possible responses to it.
 
 
 18
 The district court also found the commander's action arbitrary because of the "decision to change a mere warning to a teenager and her parent into an expulsion order." Berry v. Bean, 623 F.Supp. at 981. We cannot agree that this procedure rendered the bar order arbitrary. As noted above, the reason for the exclusion is compelling, and would have justified immediate expulsion. The fact that the base commander first issued a warning does not make his ultimate decision arbitrary. Nor are we convinced that the Colonel's action was rendered arbitrary by the operation of 21 U.S.C. Sec. 844(b). See Berry v. Bean, 623 F.Supp. at 981. Though that statute, employed in Berry's prosecution for possession of marijuana, prevents her conditional plea from operating as a conviction, it in no way negates the factual circumstances underlying her arrest. The commander was entitled to rely on her plea as evidence of the underlying facts, facts which plaintiffs do not dispute. He certainly need not await a formal criminal conviction before exercising his discretion to bar civilians from Andrews Air Force Base.
 
 
 19
 Finally, we reject plaintiffs' assertion that we must consider whether the bar order was reasonable in view of all the circumstances surrounding the order. Under this theory, plaintiffs would have us consider the consequences of the bar order on Berry's financial situation, living arrangements, and educational opportunities. Under the standards of Cafeteria Workers, such review is foreclosed. We need only determine whether the commander acted for valid, nonarbitrary reasons, and it is clear here that he did. This standard is not altered, moreover, by the Air Force Regulations quoted by the district court. Berry v. Bean, 623 F.Supp. at 980. Fuller quotation of 32 C.F.R. Sec. 809a.1(b) reveals that it merely re-affirms the Cafeteria Workers standard: "In excluding or removing persons from the installation, [the commander] must not act in an arbitrary or capricious manner. His action must be reasonable in relation to his responsibility to protect and preserve order on the installation and to safeguard persons and property thereon." Nothing in this regulation acts to broaden our review; it simply alerts the commander to his prime considerations, order and security on his base.
 
 
 20
 Because the bar order issued to plaintiff Berry resides so clearly within the discretion of Colonel Bean, we hold that plaintiff had no chance of success on the merits. Given the obvious validity of the bar order, it was an abuse of discretion to enter a preliminary injunction against its operation. Accordingly, we hold that the injunction must be dissolved.
 
 IV.
 
 21
 Appellant suggests that we not only dissolve the injunction but also order dismissal of this suit on the merits. Though ordinarily a court may not resolve the merits of a dispute on motion for preliminary injunction without notice to the parties of its intention to do so, the special circumstances of this case warrant a departure from that requirement. Because precedent dictates a resolution in favor of the government, and no proffered evidence could change that result, further remand for consideration on the merits would be futile. Accordingly, we hold that the case should be remanded and dismissed outright.
 
 
 22
 Federal Rule of Civil Procedure 65(a)(2) gives a court the power to consolidate the hearing of an application for a preliminary injunction with trial on the merits. When this procedure is used, "the parties should normally receive clear and unambiguous notice to that effect either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases." Pughsley v. 3750 Lake Shore Drive Corp. Building, 463 F.2d 1055, 1057 (7th Cir.1972). We have held that consolidation without such notice constitutes an abuse of discretion by a district court. Gellman v. State of Maryland, 538 F.2d 603 (4th Cir.1976). See also Paris v. Department of Housing and Urban Development, 713 F.2d 1341 (7th Cir.1983). The reasons for this requirement are obvious. In a hearing on a motion for preliminary injunction, "the facts adduced ... often will not be sufficient to permit an informed determination of whether a direction for the entry of judgment is appropriate." 11 C. Wright & A. Miller, Federal Practice and Procedure, Sec. 2950, at 492 (1973). Accordingly, a party addressing only issues of preliminary relief should not ordinarily be bound by its abbreviated and only partially informed presentation of the merits.
 
 
 23
 These considerations, however, do not require that we turn a blind eye to the underlying dispute between the parties. Given the inability of plaintiffs to dispute the facts or disparage the reasons that prompted the bar order, they simply cannot offer any evidence on remand that will change the outcome of this case. Ms. Berry's possession of drugs provides a rational basis for the bar order, and beyond that determination, we cannot go. Plaintiffs' request to offer evidence on what role Berry played in her family, or on Air Force response to similar cases, is simply irrelevant to consideration of this dispute. The clarity of the issues and their proper resolution convinces us that remand for further consideration in this case would be a useless gesture. Accordingly we hold that the district court's grant of preliminary injunction is REVERSED, and the case REMANDED with directions to dismiss.
 
 
 
 [1]
 The government appeals the indefinite extension of the TRO as a violation of Fed.R.Civ.P. 65, relying on Consolidation Coal Co. v. Disabled Miners of Southern West Virginia, 442 F.2d 1261 (4th Cir.), cert. denied, 404 U.S. 911, 92 S.Ct. 228, 30 L.Ed.2d 184 (1971). Because the district court did subsequently hold a preliminary injunction hearing, we find the issue to be moot. We reject appellant's suggestion that the issue is "capable of repetition, yet evading review." In the absence of a class action, there must be a reasonable expectation that the controversy between these two parties will resurface. Illinois Elections Bd. v. Socialist Workers Party, 440 U.S. 173, 187, 99 S.Ct. 983, 991-92, 59 L.Ed.2d 230 (1979). Though the challenged event is one with a short life span, we find little likelihood that, after our disposition of this case, these events will recur. See Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183-84, 71 L.Ed.2d 353 (1982) (per curiam). Accordingly, No. 85-2197(L) is dismissed as moot
 
 
 [2]
 These changed circumstances do not render this dispute moot. At oral argument, the parties agreed that Berry continues to have a personal stake in the outcome of this action. Though her family no longer lives on base, she would, but for the bar order, have access to the base for various social reasons and for privileges such as shopping
 
 
 [3]
 Plaintiffs also alleged in their complaint that the bar order violated procedural due process. We note, however, the First Circuit's conclusion that "the power to exclude civilians summarily has been acknowledged by almost every court to consider the matter." Serrano Medina v. United States, 709 F.2d 104, 109 (1st Cir.1983); Tokar v. Hearne, 699 F.2d 753, 755-57 (5th Cir.1983). In any event, plaintiffs have no claim under the due process clause, for it is clear that they received notice and the opportunity to be heard. See supra at 714-715