Albert F. ORAM, Plaintiff,

v.

John DALTON, Secretary of
the Navy, Defendant.

Civil Action No. 96–20–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

May 22, 1996.

Albert F. Oram, pro se.

Theresa Carroll Buchanan, Assistant United States Attorney, for Defendant.

## MEMORANDUM OPINION

CACHERIS, Chief Judge.

This matter is before the Court on Defendant, John Dalton, Secretary of the Navy's ("Defendant"), motion to dismiss Pro Se Plaintiff Albert Oram's ("Plaintiff") Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).

Plaintiff's Amended Complaint seeks injunctive relief against Naval Regulations that he claims are unconstitutional. Plaintiff contends that certain Naval Regulations have: (1) violated his right to engage in a lawful occupation (Counts I and VI); violated his freedom of association (Counts II and V); violated his freedom of speech (Counts III and V) and; are discriminatory (Count IV).

Essentially, Plaintiff challenges decisions made by Navy officials under the 1948 Italian–American Treaty of Friendship, Commerce and Navigation (hereinafter "1948 Treaty"). Moreover, Plaintiff challenges Congressional legislation and agency instructions which regulate commercial activity on military installations vis-a-vis the 1948 Treaty and the 1985 Military Family Act.

### I.

Plaintiff is the dependent spouse of Lieutenant Commander Stephanie Oram, U.S. Navy, who was stationed at Naval Air Station, Sigonella, Italy ("NASSIG") from August 11, 1993, to September 7, 1995. Plaintiff is a licensed attorney who is admitted to practice before the bars of Virginia and California. Plaintiff accompanied his wife, as an authorized and command sponsored military family member, at NASSIG during this period.

The Navy provided assigned base housing to the Oram family free of charge and also provided the family the use of an American post office box. On September 3, 1993, Plaintiff, by letter, informed the Commanding Officer at NASSIG ("CO, NASSIG"), that it was Plaintiff's intention to establish a proprietorship at his residence on the base. Plaintiff was going to practice out of assigned base housing and asked for permission to advertise his services.

On October 22, 1993, CO, NASSIG, denied Plaintiff's request to advertise and perform legal services from his assigned housing. The letter also suggested that Plaintiff could practice law off-base and that he should contact an Italian legal counsel who could advise him of the legal requirements to practice law in Italy.

On October 26, 1993, Plaintiff requested that CO, NASSIG reconsider his decision and allow him to practice law from his assigned military residence. On October 29, 1993, CO, NASSIG again denied Plaintiff's request. CO, NASSIG denied Plaintiff's request because the Treaty between the United States and Italy does not allow American

nationals to practice law in Italy[1]. Plaintiff was again advised that if he wished to open a law office, he do so off base and comply with Italian regulations.

On November 4, 1993, Plaintiff appealed CO, NASSIG's decision to Commander, Fleet Air Mediterranean ("COMFLTAIRMED"). Plaintiff asserted that the Military Family Act of 1985 entitled him to conduct a law office from his base residence and demanded $5,000 from the Navy for the denial of his various constitutional and statutory rights.

On December 8, 1993, this appeal was also denied citing applicable Navy regulations vis-a-vis the 1985 Military Family Act. The denial letter stated that the Navy was not attempting to prohibit Plaintiff from practicing law or from advertising his practice in commercial publications. The letter further stated that the Navy would not prohibit any person from retaining Plaintiff as their attorney in any matter, so long as Plaintiff did not operate his legal practice out of his on-base residence.

On November 14, 1993, Plaintiff requested that the attorney assigned to the Sending State Office (located at the American Embassy in Rome), who was responsible for the administration of the Status of Forces Agreement and various diplomatic treaties between the United States and Italy, advise him of the protocol for opening and operating an American law office outside the military base in Italy.

On December 2, 1993, the attorney assigned to the Sending State office informed Plaintiff that the 1948 Treaty does not allow an American military commanding officer to allow (civilian) individuals to establish a practice of law on American military bases. Consequently, CO, NASSIG, could not permit Plaintiff to establish a non-official legal enterprise within his installation. The Sending State attorney did inform Plaintiff that he could practice law outside the confines of U.S. military installations or apply for an Italian work permit and associate with an Italian law firm.

On January 7, 1994, COMFLTAIRMED issued a cease and desist order to the Plaintiff, after learning that he was conducting a law office from his on-base residence. On January 10, 1994, a cease and desist order was delivered to Plaintiff along with a warning that his continued noncompliance with the applicable instructions would result in his family being ordered to vacate their on-base residence.

On January 11, 1994, The U.S. Sending State Office in Rome received a claim from the Plaintiff demanding $25,000 for the "violation of various constitutional and statutory rights." On January 27, 1994, the Sending State office forwarded Plaintiff's claim to the Office of the Judge Advocate General of the Navy for their adjudication.

On May 18, 1994, the Navy informed Plaintiff that his claim was adjudicated under the Military Claims Act, 10 U.S.C. § 2733 (1988). Thus, after a thorough investigation, Plaintiff's claim was denied. On June 28, 1994, Plaintiff appealed the denial and demanded $100,000 in damages. On July 18, 1994, Plaintiff's appeal was denied.

The Defendant moves to dismiss Plaintiff's Amended Complaint on the grounds that his claims are not reviewable by this Court and that the Complaint fails to state a claim for which relief may be granted.

## II.

"The burden of proving subject matter jurisdiction on a [Fed.R.Civ.P. 12(b)(1)] motion to dismiss is on the plaintiff, the party asserting jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). There are two different ways a party can present a motion to dismiss under Rule 12(b)(1). First, the defendant can contend that a complaint fails to allege facts upon which subject matter jurisdiction can be based. In this case, all facts alleged in the

---

1. The 1948 Treaty allows nationals of the United States and Italy to enter one another's nation and be permitted to reside and travel freely. However, the 1948 Treaty expressly excepts the practice of law from those activities which can be conducted by foreign nationals. As the 1948 Treaty makes clear, this proviso is "not to be construed to extend to the practice of professions the members of which are designated by law as public officials."

complaint are assumed to be true and the plaintiff is then afforded the same procedural protection as he would receive under Rule 12(b)(6) consideration. *Id.*

Second, the defendant may contend that the jurisdictional allegations of the complaint are not true. Unlike a proceeding to resolve contentions that the complaint was jurisdictionally deficient on its face, a trial court judging this evidentiary attack "may consider evidence by affidavit, depositions or live testimony, without converting the proceeding to one for summary judgment." *Adams,* 697 F.2d at 1219 (citing *Mims v. Kemp,* 516 F.2d 21 (4th Cir.1975)). "Unlike the procedure in a Rule 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder, the court in a Rule 12(b)(1) hearing weighs the evidence to determine its jurisdiction." *Id.* Only when the jurisdictional facts are intertwined with the merits of the dispute should the court decline to decide the jurisdictional issue. *Id.* (citations omitted).

A motion to dismiss should be denied " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *De Sole v. United States,* 947 F.2d 1169, 1177 (4th Cir.1991) (quoting *Coakley & Williams, Inc. v. Shatterproof Glass Corp.,* 706 F.2d 456, 457 (4th Cir.1983)). When considering a Rule 12(b)(6) motion, the plaintiff's allegations must be taken as true. *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir.1989).

A motion to dismiss under Rule 12(b)(6) must also be assessed in light of Rule 8(a)'s liberal pleading standards. Rule 8 calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint needs only to state sufficient facts to enable the defendant to draft a responsive pleading. 5A Charles A. Wright, & Arthur R. Miller, *Federal Practice and Procedure,* § 1357. Thus, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to *infer* that all of the required elements of the cause of action are present. *Wolman v. Tose,* 467

F.2d 29, 33 n. 5 (4th Cir.1972) (citing Wright & Miller, § 1216).

## III.

In the context of the military, it is well settled that courts are particularly reluctant to interfere "upon the authority of the Executive in military and national security affairs." *Dep't of Navy v. Egan,* 484 U.S. 518, 529, 108 S.Ct. 818, 825, 98 L.Ed.2d 918 (1988); *Goldman v. Weinberger,* 475 U.S. 503, 507–08, 106 S.Ct. 1310, 1313–14, 89 L.Ed.2d 478 (1986). With equal, if not stronger force, matters related to foreign policy are rarely proper subjects for judicial intervention. *Haig v. Agee,* 453 U.S. 280, 292, 101 S.Ct. 2766, 2774, 69 L.Ed.2d 640 (1981).

In *Williams v. Wilson,* 762 F.2d 357 (4th Cir.1985), the Fourth Circuit adopted the Fifth Circuit's framework for determining whether a court should review a military decision as set forth in *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971). As a threshold matter, there must be an "allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations ... and [the exhaustion] of available intraservice corrective measures." *Mindes,* 453 F.2d at 201.

Defendant concedes that Plaintiff has met the two threshold requirements. Defendant argues that Plaintiff cannot satisfy the four-part *Mindes* balancing test. The four factors are: (1) the nature and strength of the plaintiff's challenge to the military determination; (2) the potential injury to the plaintiff if review is refused; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which the exercise of military discretion is involved. *Id.* at 201; *Guerra v. Scruggs,* 942 F.2d 270, 276–77 (4th Cir.1991).

As to the first factor, it must be kept in mind that "[a]n obviously tenuous claim of any sort must be weighted in favor of declining review." *Mindes,* 453 F.2d at 201. The Defendant contends that the Plaintiff mischaracterizes the decisions of CO, NASSIG, in an effort to state a constitutional claim,

and avers that the 1948 Treaty, Congressional legislation and agency instructions properly restrict the Plaintiff from maintaining a law office in his on-base quarters.

In 1985 the Military Family Act ("Act"), contained in the Department of Defense Authorization Act, P.L. 99–145, was implemented by Congress. This Act was designed to encourage employment opportunities for military spouses. As such, the Act directed the Secretary of Defense to develop "a plan that would permit limited commercial activities to be carried out from military family housing units by members of the armed forces and their dependents...."

On April 27, 1987, the Secretary of the Navy enacted Instruction (SECNAVINST) 1740.2D which updated the Navy's policies governing the conduct of personal commercial affairs on all military installations. This Instruction allows members of military families living in base housing to conduct limited home enterprises within their quarters, but "commercial retail and service activities customarily conducted out of commercial premises are not within the intent of this policy."

On December 16, 1992, Chief of Naval Operations Instruction (OPNAVINST) 1101.13J was implemented which allows members of military families residing in government family housing to conduct home enterprises as approved by the housing authority subject to the same commercial retail and service activities exception contained in SEC-NAVINST. Moreover, "[l]ocal licensing requirements, potential government liability, overseas Status of Forces Agreements, host country business practices and prospective advertising practices should be taken into account as each request is considered."

On February 16, 1993, Naval Air Station, Sigonella Instruction (NASSIGINST) 1740.1E was implemented. NASSIGINST allows the CO, NASSIG to authorize military family members residing in family housing to conduct limited commercial activities in their assigned quarters subject to the same guidelines as SECNAVINST 1740.2D.

As these instructions make clear, the CO, NASSIG is undeniably given the right to limit a dependent's ability to conduct businesses on his base. Moreover, the instructions make clear that the right to conduct a home business on a military installation is limited by overseas Status of Forces Agreements and Treaties.

It is beyond question that a base commander has extremely broad authority to exclude civilians from his area and command, and great deference should be accorded such decisions. See, e.g., Rostker v. Goldberg, 453 U.S. 57, 64–67, 101 S.Ct. 2646, 2651–53, 69 L.Ed.2d 478 (1981); Berry v. Bean, 796 F.2d 713, 716–17 (4th Cir.1986) (general deference to military decisions is especially relevant where matters of base command and discipline are involved). Moreover, military bases are non-public forums in which commercial activity may be limited. Shopco Distribution Company v. Commanding General of Marine Corps Base Camp Lejeune, 885 F.2d 167, 172 (4th Cir.1989).

Plaintiff argues that to restrict his practice of law from his on-base residence is unconstitutional. However, CO, NASSIG simply restricted Plaintiff's use of quarters by refusing to allow him to maintain a law office in his on-base, government-provided residence. This decision was not arbitrary or discriminatory in any way. Rather, the reasons given for the restriction were based upon the 1948 Treaty and the agency instructions. Accordingly, it appropriate for this Court to consider "only whether [the commanding officer] states facially valid reasons for exclusion, with no scrutiny of the factual basis for the exclusion." Berry, 796 F.2d at 717.

Even taken in a light most favorable to Plaintiff, the 1948 Treaty is a facially valid reason for the restriction. Moreover, Plaintiff was not denied his right to practice law, he was only denied the right to establish his office in his on-base quarters. Further, Defendant repeatedly advised Plaintiff of his right to practice law off-base if he complied with the appropriate Italian authorities regarding the practice of law.

Even though a military base's residential areas are non-public forums, the commanding officer's refusal to permit commer-

cial activity must be shown to be reasonable in a First Amendment context. *Shopco*, 885 F.2d at 171. The prohibition must be "viewpoint neutral" and "reasonable in light of the purposes served." *Id.* (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)).

In this case, CO, NASSIG's prohibition of opening law offices in on-base quarters was entirely viewpoint neutral and eminently reasonable when viewed in the language of the 1948 Treaty, the Military Family Act and the agency instructions.

■ As far as restricting the use of non-public mailboxes, it is well settled that such a restriction is a reasonable interference with an individual's First Amendment rights. *Perry*, 460 U.S. at 46, 103 S.Ct. at 955; *United States Postal Service v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981). As in this case, Department of Defense Instructions do not allow military post-office boxes to be used to engage in commercial activity.

Consequently, it is forcefully clear that Plaintiff's claims are tenuous at best and the repeated denial of requests to operate a law office from his assigned quarters was not discriminatory in any way. Rather, such denials arose from the 1948 Treaty, the applicable Congressional legislation and the agency instructions.

The remaining *Mindes* factors clearly counsel in favor of this Court refusing to review the military decisions made in the instant matter.

At present, Plaintiff is admitted to practice law in Virginia and California. If this Court refuses to review, Plaintiff can hardly be said to suffer injury as he can realistically practice anywhere in the nation if all local rules are followed.

This Court should be extremely hesitant to interfere with CO, NASSIG's responsibility to ensure his command decisions do not violate either the express terms or the spirit of international agreements by which Italy permits the continued presence of U.S. forces.

Plaintiff was not forbidden from practicing law in Italy. Quite to the contrary, Plaintiff was advised he could affiliate himself with an Italian law firm or establish his own office off-base, as long as he complied with Italian regulations.

## IV.

In actuality, Plaintiff challenges the decision made by CO, NASSIG to regulate where Plaintiff could practice law. In doing so, CO, NASSIG was utilizing his expertise and exercising military discretion in conducting military affairs on his overseas base. In such a case, the decision was expressly related to specific military functions such as making sure commercial activity comported with the applicable agency instructions.

All four of the *Mindes* factors weigh against granting any relief on the merits of Plaintiff's claims. Consequently, under the *Mindes* test, as adopted by the Fourth Circuit, this Court defers to military judgment.

Accordingly, Defendant's motion to dismiss is **GRANTED** and Plaintiff's Amended Complaint is **DISMISSED WITH PREJUDICE.**

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is ORDERED;

(1) that Defendant's motion to dismiss Plaintiff's Amended Complaint is GRANTED;

(2) that Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE. Should Plaintiff wish to appeal, written notice of appeal must be filed with the Clerk of this Court within sixty (60) days of the date of this Order.