Jack A. SCHWANER, Plaintiff,

v.

DEPARTMENT OF THE ARMY, Fort Eustis, Virginia, Defendant.

No. 03–CV–125.

United States District Court,
E.D. Virginia,
Newport News Division.

May 28, 2004.

---

Jack A. Schwaner, Newport News, VA, pro se.

Anita Kay Henry, United States Attorney's Office, Norfolk, VA, for Defendant.

### OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on cross-motions for summary judgment. For the reasons set forth below, defendant's motion is **GRANTED**, and plaintiff's motion is **DENIED**.

### I. Factual and Procedural History

From 1962 through 1998, plaintiff Jack A. Schwaner solicited life insurance to students attending Advanced Individual Training ("AIT") at the U.S. Army Transportation Center at Fort Eustis, Virginia. Commercial solicitation on Army installations is governed by Army Regulation ("AR") 210–7. Paragraph 2–1 of Army Regulation 210–7 authorizes local supplementation of the regulation: "Commanders may issue regulations governing solicitation within their commands and on their installations."

On May 15, 1998, Fort Eustis created Supplement 1 to Army Regulation 210–7 ("TCFE Supplement 1"). Paragraph 2–8f(20) of Supplement 1 states that "[s]olicitation of AIT students E–1 through E–4 is prohibited." Prior to the enactment of this provision, solicitation of AIT students was permitted under the relevant Army and Fort Eustis regulations. On July 1, 1998, plaintiff's permit to solicit insurance at Fort Eustis expired, and he has not since applied for a new permit.

Aggrieved by the loss of his privilege to solicit AIT students, plaintiff engaged in an active letter-writing campaign to have Paragraph 2–8f(20) repealed or altered. Plaintiff's efforts included inquiries to Army officials and to his United States Senator (Pl.'s Mot. for Summ. J. Ex. 15–16), and requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. (Def.'s Dec. 23, 2003, Submission ¶ I, at 1.) Plaintiff alleges that defendant, Department of the Army, Fort Eustis, Virginia, has not responded to a number of his FOIA requests in regard to TCFE Supplement 1. (*Id.*) Plaintiff has attached to his December 23, 2003, submission five FOIA requests to which he claims defendant has

not responded. (*Id.* Ex. I–J.) Despite plaintiff's letter-writing efforts, TCFE Supplement 1 remains as drafted in May 1998.

On September 24, 2003, plaintiff filed the instant complaint *pro se*, seeking judicial review of TCFE Supplement 1, ¶ 2–8f(20). On October 29, 2003, defendant filed a motion for a more definite statement. By Order of December 5, 2003, the court granted defendant's motion, and ordered plaintiff to file an amended complaint within fourteen days. Defendant submitted an amended complaint on December 23, 2003.[1] On February 11, 2004, defendant filed a document titled "Motion for a More Definite Statement," which also appears to be an attempt to provide more detail about the nature of plaintiff's claim.

Defendant filed its motion for summary judgment on March 29, 2004, and provided defendant with notice as required under Local Rule 7(J)(3), United States District Court, Eastern District of Virginia, and *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir.1975). On April 13, 2004, plaintiff filed a document titled "Motion for Summary Judgment," which appears intended both as a cross-motion for summary judgment and as a response on defendant's motion. Both motions are now ripe for review.

## II.   Standard of Review

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When cross-motions for summary judgment are submitted, each motion must be considered individually, and the facts relevant to each must be viewed in the light most favorable to the nonmovant. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir.2003).

In examining a *pro se* complaint, a district court is obligated "to see whether the facts alleged, or the set of facts which the plaintiff might be able to prove, could … provide a basis for recovery under any of the civil rights acts or heads of jurisdiction in the federal arsenal for redress of constitutional deprivations." *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978). This "special judicial solicitude" with which a district court views *pro se* complaints does not, however, transform the court into an advocate. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir.1990). Only those questions which are "squarely presented" to a court are properly addressed. *Id.*

## III.   Analysis

For purposes of these motions, the court has jointly considered plaintiff's filings of September 24, 2003, December 23, 2003, and February 11, 2004, in attempting to determine the full extent of plaintiff's legal claims. Reviewing these filings under the liberal standards appropriate to *pro se* plaintiffs, *see Gordon*, 574 F.2d at 1151; *Weller*, 901 F.2d at 391, the court discerns two types of challenges to the validity of Paragraph 2–8f(20).[2]   First, plaintiff

---

1.  Plaintiff's December 23, 2003, submission was not accompanied by a certificate of service, and was not accepted as a valid filing in this case until the court received confirmation that it had, in fact, been served upon defendant.

2.  Throughout this litigation, plaintiff has referred to various requests made under the Freedom of Information Act. In its December 5, 2003, Order, the court observed that it did not appear that plaintiff intended to bring a claim under FOIA, but instead had provided information regarding FOIA claims as background to his challenge to TCFE Supplement

claims that Paragraph 2–8f(20) violates rights under the First and Fifth Amendments. Second, plaintiff claims that Paragraph 2–8f(20) is in conflict with superior Army Regulations or Department of Defense Directives.[3] Defendant moves for summary judgment on two grounds: first, that plaintiff lacks standing to bring his claims; and second, that the undisputed facts demonstrate that defendant's claims are without merit.

### A. Standing

■ In order for a federal court to have jurisdiction over a claim, the plaintiff must have "standing." *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). In order to demonstrate standing, the plaintiff must show that: (1) he has suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends for Ferrell Parkway v. Stasko,* 282 F.3d 315, 320 (4th Cir.2002). Standing cannot be predicated merely on "the right, possessed by every citizen, to require that the Government be administered according to law." *Valley Forge Christian College v. Americans United for Separation of Church & State,* 454 U.S. 464, 482–83, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (quoting *Fairchild v. Hughes,* 258 U.S. 126, 129, 42 S.Ct. 274, 66 L.Ed. 499 (1922)).

■ Defendant claims that plaintiff lacks standing to challenge Paragraph 2–8f(20) because he does not currently hold a permit to solicit at Fort Eustis. Defendant argues that because plaintiff does not hold a permit to solicit on base, he cannot be injured by any regulations regarding the conduct of on-base solicitation. In support of this argument, defendant has submitted the affidavit of Kathy Winstead, the officer responsible for issuing permits to solicit at Fort Eustis. (Pl.'s Mem. in Supp. Ex. D.) The Winstead Affidavit states that plaintiff's last permit to solicit at Fort Eustis expired on July 1, 1998, and plaintiff has not since applied for a new permit. (Winstead Aff. ¶¶ 3–5.)

Plaintiff does not dispute that he no longer has a valid permit to solicit at Fort Eustis, but argues that he has still suffered an injury which can be redressed by a favorable decision in this case. Plaintiff states that when Paragraph 2–8f(20) was enacted in May 1998, he no longer had any reason to seek to renew his solicitation permit when it expired in July 1998. (Pl.'s Mem. in Supp. at 1.) Plaintiff alleges that he is still licensed by the State of Virginia to make commercial insurance sales (*id.* at 2), and is otherwise qualified to sell insurance at Fort Eustis.

Considering these circumstances as a whole, it appears that plaintiff has suffered an actual injury through the loss of his privilege to solicit insurance to the AIT students at Fort Eustis, and that this injury would likely be redressed by a favorable decision in this case. As such, the court finds that plaintiff has standing to challenge the validity of Paragraph 2–8f(20).

### B. First and Fifth Amendment Claims

■ Although a military installation is a non-public forum, the commanding offi-

---

1. (Dec. 5, 2003, Order at 5.) The court advised plaintiff that if he in fact intended to bring a claim under FOIA, "his amended complaint must contain a short and plain statement of his claim showing that FOIA entitles him to relief." (*Id.*) The court has not discerned an intent to bring an action under FOIA in plaintiff's subsequent filings.

3. Neither plaintiff nor defendant has addressed plaintiff's statutory authority to bring a challenge to TCFE Supplement 1, ¶ 2–8f(20). The court presumes that the claims are brought pursuant to the Administrative Procedures Act, 5 U.S.C. § 702, which permits suits for injunctive relief against the United States.

cer's refusal to permit commercial activity on the installation must be shown to be reasonable in a First Amendment context. *Oram v. Dalton,* 927 F.Supp. 180, 186 (E.D.Va.1996). This requires that the prohibition in question be both "viewpoint neutral" and "reasonable in light of the purposes served." *Id.* (quoting *Shopco Distrib. Co. v. Commanding Gen. of Marine Corps Base, Camp Leieune,* 885 F.2d 167, 174 (4th Cir.1989)).

██ Similarly, while "the opportunity to work at one isolated and specific military installation" is an interest which is protected by the Fifth Amendment, it is an interest which is protected only from "patently arbitrary or discriminatory" actions, not rational actions. *Cafeteria & Rest. Workers Union v. McElroy,* 367 U.S. 886, 895–98, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Accordingly, a military base commander's broad authority to resolve the tensions that arise from military-civilian interactions on his installation is "limited only by the requirement that the officer not rely on grounds that are patently arbitrary or discriminatory." *Berry v. Bean,* 796 F.2d 713, 717 (4th Cir.1986) (citing *Cafeteria & Rest. Workers,* 367 U.S. at 898, 81 S.Ct. 1743).

██ Defendant's stated rationale for TCFE Supplement 1, ¶ 2–8f(20), is the need to maintain the discipline and undivided attention of the AIT students training at Fort Eustis. (Def.'s Mem. in Supp. at 9.) A more detailed statement of defendant's rationale is provided in a August 25, 1998, letter to plaintiff from Lt. Col. Deborah A. Kissel, Chief, Personnel Services Branch, U.S. Total Army Personnel Command, Alexandria, Virginia. (Def.'s Mem. in Supp. Ex. G; Pl.'s Mem. in Supp. Ex. 15.) Lt. Col. Kissel's letter explains that trainee soldiers who purchase insurance as a result of on-base solicitation frequently regret their decision shortly thereafter. (*Id.* at 1.) The indebtedness resulting from the purchase of unneeded insurance adversely affects trainee morale. (*Id.* at 1–2.) Because trainees who believe themselves in need of insurance can make arrangements to purchase it off-post, Paragraph 2–8f(20) does not deprive trainees of the opportunity to purchase desired insurance. (*Id.*) For these reasons, it is the judgment of the Fort Eustis command that "the adverse morale consequences of trainee indebtedness more than cancel any positive aspects of providing services to soldiers in training status." (*Id.* at 2.)

It is evident that TCFE Supplement 1, ¶ 2–8f(20), is both viewpoint neutral and reasonable in light of its purposes. Paragraph 2–8f(20) applies uniformly to all solicitors at Fort Eustis without regard to their opinions or ideology. Moreover, the provision reflects the considered professional judgment of the Fort Eustis command regarding an issue of trainee morale. Maintaining the morale and attention of the AIT students is essential to Fort Eustis's training mission, and it is eminently reasonable for the Fort Eustis command to take appropriate steps to preserve morale. Paragraph 2–8f(20) does not prohibit trainees from purchasing insurance or any other commodity; it merely prohibits them from being solicited on-installation,[4] As

---

4. Plaintiff raises a textual argument intended to refute the assertion that Fort Eustis trainees can purchase insurance off-installation. (Pl.'s Mem. in Supp. at 2–3.) Plaintiff notes that Paragraph 2–8f(20) states that "[s]olicitation of AIT students E–1 through E–4 is prohibited," and concludes that "[t]he word 'prohibited' means on— or off-post, period." (*Id.* at 3.) Plaintiff's argument ignores that the provision being supplemented, AR 210–7, ¶ 2–8, is titled "[s]upervision of on-post commercial activities." As the title makes clear, Paragraph 2–8 and any supplements to it apply only to "on-post commercial activities," and trainees are free to seek insurance off-installation.

such, Paragraph 2–8f(20) does not violate the First Amendment. *See Oram,* 927 F.Supp. at 186 (holding that a Navy installation's prohibition of opening law offices in on-base quarters was both viewpoint neutral and reasonable in light of the prohibition's purposes).

■ Similarly, the stated rationale underlying TCFE Supplement 1, ¶ 2–8f(20), is neither arbitrary nor discriminatory. *See Cafeteria & Rest. Workers,* 367 U.S. at 898, 81 S.Ct. 1743 (observing that an individual could not be constitutionally excluded from a military installation "because she was a Democrat or a Methodist"). Rather, Paragraph 2–8f(20) furthers a legitimate military interest in maintaining the attention and morale of trainees at Fort Eustis. The decision to prohibit on-installation solicitation of AIT students on this basis is well within the discretion of an installation commander.

### C. Conflict with Superior Regulations

■ Army regulations must be in accord with directives promulgated by the Department of Defense. *Casey v. United States,* 8 Cl.Ct. 234, 239 (1985). "To the extent that Army regulations conflict with those of the Department of Defense, the service regulations must give way." *Id.* Moreover, the Army, no less than any other federal agency, is obligated to follow its own regulations. *Ft. Stewart Schs. v. FLRA,* 495 U.S. 641, 654, 110 S.Ct. 2043, 109 L.Ed.2d 659 (1990); *see also United States v. Green,* 22 M.J. 711, 718 (A.C.M.R. 1986) ("[A] local regulation . . . cannot conflict with or detract from . . . Department of the Army provisions on the same subject.").

■ As already discussed, Paragraph 2–8f(20) states that "[s]olicitation of AIT students E–1 through E–4 is prohibited." Plaintiff claims that Paragraph 2–8f(20) of TCFE Supplement 1 conflicts with Department of Defense Directive ("DoD") 1344.7,

¶ 6.4.1, and with Army Regulation 210–7, ¶¶ 2–1, 2–3, 2–8(f)(1), 3–1. Upon review of these provisions, the court finds no conflict with Paragraph 2–8f(20).

Plaintiff challenges Paragraph 2–8f(20) as inconsistent with the Army's general policy regarding life insurance expressed in AR 210–7, ¶ 3–1:

The Department of the Army encourages the acquisition of a sound insurance program that is suitably underwritten to meet the varying needs of the individual and within his financial means. Accordingly, insurance agents may conduct personal business on an installation, when feasible, with disinterested third-party counseling provided, interviewing hours set aside, and facilities supplied. However, the privilege for insurance solicitation on installations is conditioned on full compliance with this regulation and on the clear understanding that permission is not indorsement of the company or the policies offered for sale.

Although Paragraph 3–1 states that "insurance agents may conduct personal business on an installation," it is clear that the privilege of so doing is subject to regulation. *See, e.g.,* AR 210–7, ¶ 2–1 ("Commanders may issue regulations governing solicitation within their commands and on their installations."); AR 210–7, ¶ 2–2 ("The installation commanders *may* permit solicitation and transaction of commercial business on military installations." (emphasis added)); AR 210–7, ¶ 2–2 ("No one may enter an installation and transact commercial business as a matter of right."); AR 210–7, ¶ 2–8f (listing eighteen forbidden solicitation practices). There is nothing in the policy statement of Paragraph 3–1 to contradict the authority of an installation commander to prohibit on-base solicitation of AIT students.

Plaintiff additionally challenges Paragraph 2–8f(20) as inconsistent with three

superior provisions which identify prohibited solicitation activities. Department of Defense Directive 1344.7, ¶ 6.4.1, prohibits "[s]olicitation of recruits, trainees, and transient personnel in a 'mass' or 'captive' audience." Army Regulation 210–7, ¶ 2–3, states in relevant part that "[m]embers of the Armed Forces must not be subjected to fraudulent, usurious, or unethical business practices." Army Regulation 210–7, ¶ 2–8(f)(1), prohibits "[s]olicitation during enlistment or induction processing or during basic combat training, and within the first half of the one station unit training cycle."

None of the three quoted provisions are in any way inconsistent with TCFE Supplement 1, ¶ 2–8f(20). Neither the DoD Directive nor the Army Regulation provisions confer an affirmative right to solicit AIT students, or confer any right whatsoever. Each provision merely identifies one circumstance in which solicitation on Department of Defense installations is prohibited. TCFE Supplement 1, ¶ 2–8f(20), does the same, identifying a different, but not inconsistent, circumstance in which solicitation is prohibited at Fort Eustis. Paragraph 2–8f(20) is no more in conflict with DoD Directive 1344.7, ¶ 6.4.1, or AR 210–7, ¶¶ 2–3 and 2–8(f)(1), than the latter three provisions are in conflict with each other.

The final provision cited by plaintiff, Army Regulation 210–7, ¶ 2–1, sets forth the basic policy of regulatory requirements for commercial solicitation on Army installations:

> Commanders may issue regulations governing solicitation within their commands and on their installations. These regulations will avoid discriminatory requirements which could eliminate or restrict competition. When there is a clear need to prescribe more restrictive requirements for solicitation than those in this regulation or the regulations of

the major commander, these additional requirements or restrictions must first be reviewed and confirmed by The Adjutant General Center (DAAG–PSI), or by the oversea commander.

Plaintiff has alleged that in enacting TCFE Supplement 1, ¶ 2–8f(20), Fort Eustis failed to comply with Paragraph 2–1. Specifically, plaintiff alleges that Fort Eustis did not submit TCFE Supplement 1, ¶ 2–8f(20), to The Adjutant General Center (DAAG–PSI) for review and confirmation. (Pl.'s Dec. 23, 2003, Submission at 1; Pl.'s Mem. in Supp. at 2.) Defendant has not responded directly to this allegation, and it is unclear from the record whether Fort Eustis did or did not submit Paragraph 2–8f(20) to The Adjutant General Center for review and confirmation.

Reading Paragraph 2–1 as a whole, however, the court finds that review and confirmation were not required in this case, as Paragraph 2–8f(20) is not a "more restrictive requirement" within the meaning of Paragraph 2–1. The rule of Paragraph 2–1 that "more restrictive requirements" be reviewed and confirmed by The Adjutant General Center must be informed by the immediately preceding sentence in that provision, which states that regulations issued by commanders governing solicitation within their commands "will avoid discriminatory requirements which could eliminate or restrict competition." Thus, the "more restrictive requirements" which require review and confirmation by The Adjutant General Center are requirements which could restrict competition. TCFE Supplement 1, ¶ 2–8f(20), does not restrict competition, as it applies equally to all potential solicitors. Because TCFE Supplement 1, ¶ 2–8f(20), is not a "more restrictive requirement" within the meaning of AR 210–7, ¶ 2–1, any alleged failure to have submitted it to The Adjutant General

Center is immaterial to the provision's validity.

### *IV. Conclusion*

For the reasons stated above, the court **GRANTS** defendant's motion for summary judgment, and **DENIES** plaintiff's motion for summary judgment.

**IT IS SO ORDERED.**